UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROHAN BROWN,

                              Petitioner,

           -v-

ROBERT E. ERCOLE, Superintendent,
Green Haven Correctional Facility,

                              Respondent.

----------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

**MEMORANDUM AND ORDER**

07 Civ. 11609 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Rohan Brown ("petitioner") brings this petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is

currently   incarcerated   at   Eastern   New   York   Correctional

Facility,[1] having been convicted on November 25, 2003 of depraved

indifference murder (N.Y. Penal Law § 125.25(2)) and sentenced

to an indeterminate sentence of eighteen years to life in state

prison.  Petitioner now seeks a writ of habeas corpus on the

ground  that  the  evidence  introduced  at  trial  was  legally

insufficient to support his conviction under the New York Court

of Appeals' decision in People v. Feingold, 7 N.Y.3d 288, 819

N.Y.S.2d 691 (N.Y. 2006), which fundamentally changed the legal

definition  of  "depraved  indifference"  and  which  was  decided

---

[1] At the time he filed this petition, petitioner was being held at Green Haven
Correctional Facility.  (Memorandum of Law in Support of Petition Under 28
U.S.C. § 2254 for a Writ of Habeas Corpus ("Mem.") at 1.)

while petitioner's case was on direct appeal. The First
Department denied petitioner's appeal, finding that his trial
counsel had failed to preserve his legal insufficiency claim and
that the Feingold standard should not be retroactively applied
for purposes of a weight-of-the-evidence review. However, after
petitioner's direct appeal was complete and while this habeas
petition was pending, the New York Court of Appeals held in a
separate case that the Feingold standard should be applied to
all cases that were on direct appeal on the date of that
opinion.

Because we conclude that petitioner's procedural default
does not bar habeas review, and because we further conclude
that, under Feingold, petitioner did not commit depraved
indifference murder as a matter of law, the petition is granted.

## BACKGROUND[2]

### The Facts

In the early morning hours of July 16, 1998, Joseph Bauer,
who had been out at numerous bars for several hours celebrating
his 26th birthday, traveled with two friends to the Bronx. (Tr.
85-103, 128.)  Both friends eventually left Bauer, who remained

---

[2] The following facts are drawn from the trial transcripts ("Tr.") and
petitioner's appendix in support of his petition ("A."). We construe the
facts in favor of the prosecution, as is appropriate following conviction.
See, e.g., Farrington v. Senkowski, 19 F. Supp. 2d 176, 181 (S.D.N.Y. 1998),
aff'd, 214 F.3d 237 (2d Cir. 2000).

2

out by himself.  (Id. at 111-13, 129-31.)  Approximately two-and-a-half hours after Bauer's friends last saw him, police observed Bauer, covered in blood, staggering toward them.  (Id. at 223-24, 255.)  Bauer died later that morning.  (Id. at 234.) According to the deputy medical examiner, Bauer had suffered four stab wounds caused by a single-edged knife, three of which were fatal.  (Id. at 445, 451, 470.)

At trial, a single witness named Kenneth McKenzie implicated petitioner.  McKenzie testified that on the night of Bauer's death, he had spent several hours at a nightclub, where he had smoked three or four "blunts" (cigars filled with a mixture of cocaine and marijuana) and drank four or five Long Island Ice Teas.  (Tr. 299-303.)  McKenzie testified that after leaving the club, he observed Bauer arguing with a group of "West Indian dudes," including petitioner.  (Id. at 315-16, 322-25.)  Those men then chased Bauer, and when Bauer fell, "they just jumped him and was kicking and beating him while he was down."  (Id. at 324-27.)  McKenzie testified that he saw that petitioner "stepped back" and "pulled out a folding knife and started stabbing [Bauer]."  (Id. at 333.)  He said petitioner stabbed Bauer multiple times over the course of about one minute and then fled.  (Id. at 335.)

**The Trial**

Brown was indicted in New York Supreme Court, Bronx County, for intentional murder, depraved indifference murder, first-degree manslaughter and second-degree gang assault. His trial commenced on November 13, 2003 before Judge Ira Globerman and a jury. (Tr. 1.) At the conclusion of the prosecution's case, defense counsel moved to dismiss "each and every one of the charges against this defendant" and requested "a trial order of acquittal based upon the People's failure to prove the defendant's guilt beyond a reasonable doubt as a matter of law." (Id. at 491-92.) The court denied that motion, and after the defense rested without presenting any evidence, the court denied the defendant's "renew[ed] motion." (Id. at 492-95.)

On November 24, 2003, the court charged the jury on four offenses: two counts of murder (intentional murder and depraved indifference murder), first-degree manslaughter and second-degree gang assault. (Tr. 613-30.) For the intentional murder count, the court instructed the jury, "A person is guilty of murder in the second degree when with the intent to cause the death of another person, he causes the death of that person." (Id. at 613.) The court explained that a person acted with intent to cause the death of another when his "conscious aim or objective is to cause the death of that person." (Id. at 614.)

4

For the depraved indifference murder charge, the court
instructed the jury:

> [A] person is guilty of murder in the second degree
> when, under circumstances evincing a depraved
> indifference to human life, he recklessly engages in
> conduct which creates a grave risk of death to another
> person and thereby caus[es] the death of that person.
>
> . . .
>
> Under our law, depraved indifference to human life has
> a special meaning. Generally, the crime committed
> recklessly, that is with a reckless state of mind, is
> regarded as less serious and blameworthy than a crime
> committed intentionally. But when reckless conduct is
> engaged in under circumstances evincing a depraved
> indifference to human life, the law regards that
> conduct as so serious, so egregious, as to be the
> equivalent of intentional conduct. Conduct evincing a
> depraved indifference to human life is much more
> serious and blameworthy than conduct which is merely
> reckless. It is conduct which beyond being reckless
> is so wanton, so deficient in moral sense and concern,
> so devoid of regard for the life or lives of others as
> to equal [in] blameworthiness, the intentional conduct
> which produced the same result. It is conduct that is
> imminently dangerous and presents a very high risk of
> death to others.
>
> In determining whether a person's conduct evinced a
> depraved indifference to human life, the jury would
> have to decide whether the circumstances surrounding
> his or her conduct when objectively viewed made it so
> uncaring, uncallous, so dangerous and inhuman [as] to
> demonstrate an attitude of total disregard for the
> life of the person or persons in danger.

(Id. at 619-21.)

The court instructed the jury that while it could consider
the intentional murder and depraved indifference murder counts
in any order, it had to return a not guilty verdict on one if it

5

found petitioner guilty of the other. (Tr. 617-18.) The court further instructed the jury that if it found petitioner guilty of either intentional murder or depraved indifference murder, its deliberations were complete. (Id. at 624.) However, if it found petitioner not guilty on both those counts, it was to consider count three, which charged first-degree manslaughter. (Id.) The court explained that a defendant committed first-degree manslaughter "when with the intent to cause serious physical injury to another person he causes the death of such person." (Id. at 625.)

Finally, the court instructed the jury that if it found petitioner guilty on count three then its deliberations were complete, but if not, it was to consider count four, which charged gang assault in the second degree. (Tr. 627.) The court explained that a person is guilty of gang assault in the second degree "when with intent to cause physical injury to another person and when aided by two or more persons actually present, he causes serious physical injury to such person." (Id. at 627-28.)

Defense counsel did not object to that jury charge or submission of any of the counts. The jury acquitted the defendant of intentional murder but found the defendant guilty of depraved indifference murder, and thus did not reach the

6

remaining counts.  (Tr. 677-78.)  Petitioner was sentenced to an indeterminate prison term of eighteen years to life.

### Direct Appeal

On direct appeal, petitioner argued that the conviction was against the weight of the evidence given the background of the eyewitness, and that the charge of depraved indifference murder was improper given the evidence presented by the People showing intention to kill.  See People v. Brown, 41 A.D.3d 261, 262, 839 N.Y.S.2d 457 (1st Dep't 2007).

On July 5, 2006, while petitioner's appeal was pending before the First Department (but after briefing was complete), the Court of Appeals decided Feingold, fundamentally altering the legal definition of "depraved indifference" and explicitly overruling its earlier decision in People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599 (N.Y. 1983), which had been the leading New York case interpreting the depraved indifference murder statute.    In Feingold, the Court of Appeals explained that, in determining whether to find a defendant guilty of depraved indifference murder, a jury should consider the defendant's mens rea rather than merely engaging in an "objective" assessment of his conduct and the surrounding circumstances.   See Feingold, 7 N.Y.3d at 294-95, 819 N.Y.S.2d 691 ("we cannot conceive that a person may be guilty of a depraved indifference crime without

being depravedly indifferent"). The court also cited with approval its analysis in People v. Suarez, 6 N.Y.3d 202, 811 N.Y.S.2d 267 (N.Y. 2005), where it concluded that, given the mens rea required for depraved indifference murder, "rarely can depraved indifference murder apply to the killing of a single victim." Feingold, 7 N.Y.3d at 294, 819 N.Y.S.2d 691.

On June 21, 2007, nearly one year after the Court of Appeals decided Feingold, the First Department affirmed petitioner's conviction. Brown, 41 A.D.3d at 261, 839 N.Y.S.2d 457. Construing petitioner's claim as one of legal insufficiency, the First Department concluded that petitioner's challenge of the depraved indifference charge was "unpreserved for our review." Id. at 262-63; 839 N.Y.S.2d 457. The court found that trial counsel's general motion for an order of dismissal was insufficient to satisfy New York's contemporaneous objection rule under N.Y. Criminal Procedure Law § 470.05(2) and declined to review petitioner's claim in the interests of justice as permitted by N.Y. Criminal Procedure Law § 470.15(3)(c). Id. The First Department further determined

that, for purposes of any weight-of-the-evidence analysis,[3] it should apply the standard for depraved indifference murder in effect at the time the jury was charged in November 2003 -- not the revised standard set forth in Feingold. Id. The court then explained:

> Here, the jury reasonably could have concluded, after hearing testimony that defendant and his cohorts chased a drunken and drugged victim, threw bottles at him until he fell, then beat him while he was apparently defenseless until defendant pulled out a knife and stabbed him four times, that defendant got caught up in the frenzy of the gang assault or acted to impress his friends. Moreover, in presumably following the court's instructions, the jury could have possibly viewed this murder as so cold-blooded and brutal that it merited stigmatization as depraved. Analyzed against Register and the instructions to the jury regarding the elements of depraved indifference murder, to which defendant made no objection, the jury could find defendant guilty of depraved indifference.

Id. at 263; 839 N.Y.S.2d 457 (citations omitted).

---

[3] In distinguishing legal sufficiency review and weight-of-the-evidence review, the Court of Appeals has explained:

> In assessing legal sufficiency, a court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial. By contrast, weight of the evidence review recognizes that even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. An appellate court weighing the evidence must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony. If based on all the credible evidence a different finding would not have been unreasonable and if the trier of fact has failed to give the evidence the weight it should be accorded, the appellate court may set aside the verdict. When an appellate court performs weight of the evidence review, it sits, in effect, as a thirteenth juror.

People v. Cahill, 2 N.Y.3d 14, 26-27, 777 N.Y.S.2d 332 (N.Y. 2003) (citations and internal quotation marks omitted).

On July 7, 2007, petitioner applied by letter for leave to appeal to the Court of Appeals. (A. 156-61.) He argued, inter alia, that the weight-of-the-evidence review should have been conducted under the law as it existed at the time of the appeal. (Id. at 159-60.) The Court of Appeals denied petitioner leave to appeal on August 23, 2007 in a one-word order that said "Denied." People v. Brown, 9 N.Y.3d 873, 842 N.Y.S.2d 785 (N.Y. 2007). Petitioner filed the instant petition for writ of habeas corpus on December 28, 2007.

### DISCUSSION

#### I. Procedural Default

Before a federal court may issue a writ of habeas corpus to an individual detained following a conviction in a state court, the petitioner must have exhausted all possible state remedies by presenting his claims in federal constitutional terms to the "highest state court from which a decision can be had." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 n.3 (2d Cir. 1982); see also 28 U.S.C. § 2254(b)(1)(A). Although a petitioner need not explicitly refer to federal constitutional rights in an appeal to state courts, he must clearly alert the court to the federal constitutional or statutory issues raised by the case prior to seeking a writ of habeas corpus from a federal court. Daye, 696 F.2d at 192-93.

All claims must also be brought in accordance with state
procedural rules, such that the state courts have had a fair
opportunity to adjudicate the claims prior to federal
intervention. See Wainwright v. Sykes, 433 U.S. 72, 81-82, 84
(1977). As such, a colorable federal constitutional claim may
be barred from habeas relief in federal court if the claim was
denied by a state court on a state procedural ground that is
both "independent" of the merits of the federal claim and an
"adequate" basis for the court's decision. See Coleman v.
Thompson, 501 U.S. 722, 729 (1991).

A petitioner can avoid such a default if he is able to show
both good cause for his failure to meet state procedural
requirements, and that his failure to meet those requirements
actually prejudiced the outcome of the case. Id. at 84-85.
Cause exists if "the prisoner can show that some objective
factor external to the defense impeded counsel's efforts to
comply with the State's procedural rule." Murray v. Carrier,
477 U.S. 478, 479 (1986); see also McCleskey v. Zant, 499 U.S.
467, 493 (1991). Examples of "cause" may include interference
by outside officials or the unavailability of a defense because
of its constitutional novelty. Fernandez v. Smith, 558 F. Supp.
2d 480, 490 (S.D.N.Y. 2008) (citing Strickler v. Greene, 527
U.S. 263, 283 n.24 (1999)). The "prejudice" requirement is met
by a showing of "actual prejudice resulting from the errors of

which [petitioner] complains."   United States v. Frady, 456 U.S.
152, 168 (1982) (internal quotation marks omitted).   The error
must have resulted in "substantial disadvantage, infecting [the]
entire trial with error of constitutional dimensions."   Murray,
477 U.S. at 494 (citations omitted).

New York's contemporaneous objection rule provides that an
issue is preserved for appeal as a matter of law only when the
appellant objected on that ground during the trial.   N.Y. Crim.
Proc. Law § 470.05(2); see also Glenn v. Bartlett, 98 F.3d 721,
724 n.2 (2d Cir. 1996).   Hence, if a party fails to assert a
claim in the trial court, appellate courts generally will not
consider the claim.   See, e.g., People v. Cona, 49 N.Y.2d 26,
33, 424 N.Y.S.2d 146 (N.Y. 1979).   The Second Circuit has held
that the application of New York's contemporaneous objection
rule may constitute an independent and adequate state ground
that procedurally bars federal habeas review.   Fernandez, 558 F.
Supp. 2d at 489-90 (citing Garcia v. Lewis, 188 F.3d 71, 79 (2d
Cir. 1999); Jones v. Duncan, 162 F. Supp. 2d 204, 213 (S.D.N.Y.
2001)).

Here, petitioner concedes that trial counsel failed to
preserve a challenge to the legal sufficiency of the evidence of
depraved indifference murder.   (Mem. at 15; Reply Memorandum of
Law in Further Support of 28 U.S.C. § 2254 Petition ("Rep.") at
2.)   However, he argues that the procedural default should not

bar consideration of his claim because he can demonstrate cause and prejudice.[4]   We agree.

### A. Cause

Petitioner argues that because of the state of the law at the time of trial, it would have been futile for trial counsel to challenge the legal sufficiency of the evidence presented by the People in support of the depraved indifference murder charge.  (Mem. at 16-21; Rep. 3-8.)  One court in this district, under nearly identical facts, has already accepted this argument and granted a habeas petition where the petitioner was acquitted of intentional murder and convicted of depraved indifference murder.  See Fernandez, 558 F. Supp. 2d at 493-94.  There, Judge Chin concluded that the petitioner's trial counsel had made a motion to dismiss that was adequately specific to preserve his legal sufficiency argument, but even had he not, there had been sufficient cause to overcome the procedural bar because "[t]he evolvement of the law is surely an 'objective factor external to the defense' that trial counsel could not reasonably have foreseen at the time of trial."  Id. (citing Murray, 477 U.S. at 488).

---

[4] Petitioner also argues that New York's contemporaneous objection rule does not constitute an adequate and independent state ground barring habeas review.  (Mem. at 27-34.)  Because we determine that petitioner has shown cause and prejudice, we do not reach this alternate argument.

We agree with Judge Chin. Indeed, just one year before petitioner's trial, the Court of Appeals had reaffirmed the depraved indifference standard set forth in Register. See People v. Sanchez, 98 N.Y.2d 373, 385, 748 N.Y.S.2d 312 (N.Y. 2002). Under this circumstance, petitioner cannot reasonably be penalized for his trial counsel's failure to anticipate a marked sea change by the Court of Appeals with regard to the definition of depraved indifference murder.[5] We therefore find that petitioner has demonstrated cause for his trial counsel's procedural default.[6]

## B. Prejudice

We also conclude that petitioner has made the requisite showing of "actual prejudice" because "the rulings have resulted in a 'substantial disadvantage' of constitutional dimension." See Fernandez, 558 F. Supp. 2d at 494 (citing Murray, 477 U.S.

---

[5] Citing DeSimone v. Phillips, 461 F.3d 181 (2d Cir. 2006), respondent argues that the Second Circuit has rejected an argument of futility similar to the one made by petitioner here where "the New York state courts had not consistently rejected the insufficiency claim." (Respondent's Memorandum of Law ("Opp.") at 4-6 ("whether or not petitioner believed the trial court would have been receptive to an objection challenging the sufficiency of the evidence of depraved indifference murder does not excuse his obligation to so object").) As petitioner notes in his reply, however, the issue in DeSimone was whether appellate counsel should have argued that evidence of the depraved indifference murder conviction was legally insufficient. We believe petitioner's claim that such an argument was futile at the trial court level is significantly more compelling.

[6] Petitioner argues in the alternative that his counsel's failure to raise the legal insufficiency argument at trial constituted ineffective assistance, which in turn constitutes cause. Given our findings set forth above, we do not reach this argument.

at 493-94).    For  the  reasons  discussed  infra  Part  II,  we

conclude that the evidence at trial was insufficient as a matter

of law to support a conviction for depraved indifference murder.


## II. Merits of the Habeas Petition

Having  concluded  that  petitioner's  procedural  default  does

not  bar  habeas  review,  we  proceed  to  consider  his  legal

insufficiency claim on its merits,[7] applying the law regarding

depraved  indifference  murder  set  forth  by  the  Court  of  Appeals

in  Feingold.    See  People  v.  Jean-Baptiste,  11  N.Y.3d  539,  544,

872 N.Y.S.2d 701 (N.Y. 2008) (holding that Feingold should apply

to cases that were pending on direct appeal at the time of that

decision).[8]    Because,  as  respondent  acknowledges  (Opp.  at  19),

the last reasoned opinion in state court rested upon procedural

default and did not reach the merits of petitioner's claim that

there was legally insufficient evidence of his guilt, we review

that claim de novo.    See  Bell v. Miller,  500 F.3d 149, 155 (2d

Cir. 2007).

---

[7] Respondent does not argue that petitioner failed to exhaust all his state
court remedies or that he failed to timely file his habeas petition.

[8] In a letter to the Court dated December 12, 2008, respondent agreed that if
we concluded that habeas review was not barred by petitioner's procedural
default, the construction of the depraved indifference statute set forth in
Feingold would apply.

## A. Depraved indifference murder

Depraved indifference murder is governed by N.Y. Penal Law § 125.25(2), which provides that a person is guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . ."  In Register, the Court of Appeals held that depraved indifference murder required a showing of "'circumstances evincing a depraved indifference to human life.'"  60 N.Y.2d at 276, 469 N.Y.S.2d 599.  The court explained that "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder . . . but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct."  Id. at 277; 469 N.Y.S.2d 599.  "The key . . . was not the defendant's mens rea, but the objective circumstances in which the conduct occurred."  Fernandez, 558 F. Supp. 2d at 495 (citing Register, 60 N.Y.2d at 276-77, 469 N.Y.S.2d 599).

In Feingold, the Court of Appeals explicitly overruled Register, holding that depraved indifference murder does refer to a mental state.  Feingold, 7 N.Y.3d at 294, 819 N.Y.S.2d 691.  "In other words, the Court held that to convict a defendant of depraved indifference murder, a jury would have to find the requisite mental state and could not rely solely on the

objective factual circumstances surrounding the crime." Fernandez, 558 F. Supp. 2d at 495 (citing Feingold, 7 N.Y.3d at 294-95, 819 N.Y.S.2d 691). The court explained that "depraved indifference is best understood as an utter disregard for the value of human life -- a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" and that "a depraved and utterly indifferent actor is someone who does not care if another is injured or killed." Feingold, 7 N.Y.3d at 296, 819 N.Y.S.2d 691 (citations omitted).

In addition, Feingold cited with approval several prior decisions interpreting the depraved indifference statute, including Suarez, where the Court of Appeals reversed depraved indifference murder convictions in two cases involving stabbings. See Suarez, 6 N.Y.3d at 206, 811 N.Y.S.2d 267. In that case, notably, the court stated that "a defendant who intends to injure or kill a particular person cannot generally be said to be 'indifferent' -- depravedly or otherwise -- to the fate of that person." Id. at 211, 811 N.Y.S.2d 267 (emphasis added). The court also explained:

> When depraved indifference murder is properly understood, "twin-count" indictments -- charging both intentional homicide and depraved indifference murder -- should be rare. Twin-count submissions to a jury, even rarer. For by the time the proof has been presented, it should be obvious in most cases whether or not the evidence establishes an intentional killing

17

> or no other.  Thus, where twin-count indictments are
> lodged, trial courts should presume that the
> defendant's conduct falls within only one category of
> murder and, unless compelling evidence is presented to
> the contrary, dismiss the count that is least
> appropriate to the facts.

Id. at 215, 811 N.Y.S.2d 267 (citations and internal quotation
marks omitted).[9]


### B. Application to the instant petition

Under the Court of Appeals' interpretation of the depraved
indifference murder statute set forth in Feingold, we find that
petitioner's conviction cannot be sustained as a matter of law.

At petitioner's trial, the court relied on the definition
for depraved indifferent murder as articulated in Register when
charging the jury:

> In determining whether a person's conduct evinced a
> depraved indifference to human life, the jury would
> have to decide whether the circumstances surrounding
> his or her conduct when objectively viewed made it so
> uncaring, uncallous, so dangerous and inhuman [as] to

---

[9] In his comprehensive opinion, Judge Chin sets forth numerous examples where
New York courts have found particular conduct constituted depraved
indifference murder, including: "firing into a crowd . . . driving a car on
crowded sidewalks at a high speed . . . opening a lion's cage at the zoo . .
. placing a time bomb in a public place . . . poisoning a well from which
people usually draw water . . . opening a drawbridge as a train is about to
pass over it . . . dropping stones from an overpass onto a busy highway . . .
shooting a partially loaded gun point-blank into someone's chest during a
game of Russian roulette . . . robbing an intoxicated individual, forcing him
out of a car onto the side of a dark, remote, snowy road, only partially
dressed and without shoes, in subfreezing temperatures, where he is struck
and killed by a passing truck . . . reaching around behind a door and firing
a gun into an area where children were playing . . . and repeatedly beating,
without the intent to kill, a three-year-old over the course of five days,
resulting in his death." Fernandez, 558 F. Supp. 2d at 497-98 (collecting
cases).

18

demonstrate an attitude of total disregard for the
life of the person or persons in danger.

(Tr. at 621 (emphasis added).)   Based on subsequent authority,
such a charge was incorrect because "the jury should have
considered [petitioner's] mens rea rather than merely engaging
in an objective assessment of his conduct and the surrounding
circumstances."   See Fernandez, 558 F. Supp. 2d at 502.
Further, under the recent case law, the "twin counts" of
intentional murder and depraved indifference murder should not
have been submitted to the jury.   See Suarez, 6 N.Y.3d at 215,
811 N.Y.S.2d at 267.

Proceeding to our de novo review, we find that the facts of
this case are strikingly similar to those of Suarez, where the
Court of Appeals reversed a depraved indifference murder
conviction for a defendant who stabbed his girlfriend three
times and then fled, leaving her to bleed to death.   Also, the
facts of this case are analogous to those of People v. Hafeez,
100 N.Y.2d 253, 762 N.Y.S.2d 572 (N.Y. 2003), where two men
attacked the victim, with one stabbing the victim with a knife
and then both leaving the victim on the street and driving away.
The Court of Appeals described that incident as "a
quintessentially intentional attack directed solely at the
victim" and held that those actions could not have constituted

depraved indifference murder as a matter of law. <u>Id.</u> at 258, 762 N.Y.S.2d 572.

Likewise in this case, petitioner pursued the victim, beat him, stepped back and brandished a knife that he used to stab the victim repeatedly, and then fled. (Tr. 315-35.) "There is no doubt that this was despicable conduct, but there is also no doubt that this was intentional conduct, directed at and intended to harm a single person." <u>Fernandez</u>, 558 F. Supp. 2d at 503. This was certainly not an instance where petitioner "[did]n't care whether grievous harm resulted or not." <u>Feingold</u>, 7 N.Y.3d at 296, 819 N.Y.S.2d 691 (citation omitted). Considering the nature of petitioner's conduct and the required <u>mens rea</u> for a conviction for depraved indifference murder under the standard set forth in <u>Feingold</u>, we find that it is clear as a matter of law that petitioner's conviction cannot stand.

## III. Remedy

Having determined that petitioner was not guilty of depraved indifference murder as a matter of law, we turn to the question of remedy. The parties agree that if the habeas petition is granted, petitioner may still be re-tried on the remaining counts of first-degree manslaughter and second-degree gang assault that the jury never reached during the original trial. (<u>See</u> Letter from David J. Klem, Esq., petitioner's

counsel, to the Hon. Naomi Reice Buchwald dated Dec. 23, 2008; Letter from Jennifer Marinaccio, Esq., respondent's counsel, to the Hon. Naomi Reice Buchwald dated Jan. 9, 2009.)  We therefore conditionally grant the writ of habeas corpus and order petitioner's release unless the state provides him with a new trial within ninety days of this Memorandum and Order.  See, e.g., Herrera v. Collins, 506 U.S. 390, 403 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner.").

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is granted to the extent that the depraved indifference murder conviction is vacated, and the case is remanded to the state courts for further proceedings not inconsistent with this decision.  The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:    New York, New York
          March 31, 2009


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Counsel for Petitioner**
Robert S. Dean, Esq.
David J. Klem, Esq.
Center for Appellate Litigation
74 Trinity Place - 11th Floor
New York, NY 10006


**Counsel for Respondent**
Jennifer Marinaccio, Esq.
Assistant District Attorney
Bronx Count DA's Office
198 East 161st St.
Bronx, NY 10451